Regis O ’Brien, J.
The amended complaint alleges two causes of action. The first is set forth in the allegations numbered 1 through 27, and the second in the paragraphs numbered 28 through 32. Paragraph numbered 28 of the second cause of action realleges, as a part thereof, paragraphs numbered 1 through 19, and paragraphs numbered 22 through 27 of the first cause of action.
FIRST CAUSE OF ACTION
After alleging the appointment of Norma Cary (later amended on motion granted at the trial to add “and Ida Lamldn ”), as administratrices of the estate of Clista 0. Beeman; and also the appointment of Hattie Sobetzer, as administratrix of the estate of Henry J. Beeman, the complaint continues with appropriate allegations relative to the corporate capacity of the defendant conducting the business of issuing automobile liability insurance in New York State.
Paragraph numbered 4 alleges that on August 24, 1952 one William L. Kaczmarek, while driving his automobile, came into *300 collision with one owned and operated by Henry J. Beeman, at which time his wife, Clista C. Beeman, was a passenger. As a result of the collision, it is alleged, Henry J. Beeman sustained injuries and damages and that Clista C. Beeman sustained injuries resulting in her death. It is further alleged that appropriate actions were brought against Kaczmarek to recover for the injuries and damages sustained and that the defendant, Atlantic Mutual Insurance Co., was notified of said actions and given an opportunity to defend them on behalf of Kaczmarek, which it refused and declined to do. That as a result of said actions judgments were duly entered on September 4, 1957 against "William L. Kaczmarek in favor of Henry J. Beeman in the sum of $6,660.04, and in favor of Henry J. Beeman, as administrator of the estate of Clista C. Beeman in the sum of $21,260.50.
That on or about September 6,1957, a copy of each judgment with notice of its entry was delivered to the defendant, Atlantic Mutual Insurance Co., and the attorney for William L. Kaczmarek, respectively, and that although 30 days have passed since the judgments and notice of their entry had been made known as aforesaid, no part of either of them was paid.
The answer of the defendant denies paragraph 7 relative to the alleged notice of the commencement of the Beeman actions and the alleged opportunity given to defendant to defend them.
Upon the trial, there was clear, credible and convincing proof given on behalf of the plaintiffs to sustain the allegations, and I find and decide in the plaintiffs’ favor on the issues raised by the answer.
The answer also denies the allegation in paragraph 10 of the complaint to the effect that copies of the Beeman judgments, with notice of entry thereof, were delivered to the defendant Atlantic Mutual Insurance Co. I find and decide that this issue was also sustained by clear, credible and convincing evidence submitted on behalf of the plaintiffs.
The defendant also denies, upon information and belief, the allegations obtained in paragraphs numbered 1, 2, 4, 5, 6, 9, 11, 12, 13 and 23 of the complaint. As to the evidence relative to these allegations, I find and decide, however, that it was clear, credible and convincing and amply supports the plaintiffs ’ claims as therein set forth.
It appears from all the evidence that the final decision in this case depends upon the answer to the question of whether or not the Atlantic Mutual Insurance Co., should be compelled to change the effective date of the policy of auto liability insurance *301 which it issued to William L. Kaezmarek, from 12:01 a.m., August 26, 1952, to 12:01 a.m., August 23, 1952. If so, then Kaezmarek would have had liability coverage on the date of the accident, to wit: Sunday, August 24, 1952.
In connection with that question, there were sharp issues of fact. Following conferences with the attorneys as to the issues and the questions of fact that might arise, the court deemed it prudent to suggest that he exercise the right of having a jury impaneled to hear the testimony in accordance with the provisions of section 430 of the Civil Practice Act. With the consent of counsel, the formulation of the written questions of fact to be submitted to the jury was deferred until the close of the presentation of the testimony. The testimony as presented will now be considered.
It is claimed, and I find, that the evidence supports the contentions of the plaintiffs that due to Kaezmarek’s inability to secure liability insurance coverage, he made an application for such insurance coverage through Mr. Leonard P. Gernold, an insurance broker, to the “Automobile Assigned Risk Plan”. Both the application and the letter of its transmittal were received in evidence. Each bears a stamp mark bearing the following notation: “Auto Assigned Risk Plan — Received — Aug. 15,1952.”
The automobile assigned risk plan to which the letter referred, is that section 63 of the Insurance Law in effect at that time (1952). The section reads, in part, as follows: “ The superintendent shall, after consultation with the insurers licensed to write motor vehicle liability insurance in this state, approve a reasonable plan or plans for the equitable apportionment among such insurers of applicants for such insurance who are in good faith entitled to but are unable to procure insurance through ordinary methods and, when such plan has been approved, all such insurers shall subscribe thereto and shall participate therein.” It is conceded that the defendant is a member of the plan.
The testimony shows, and I find and decide, that the Kaezmarek application received all the preliminary processing required under the rules and regulations and that the issuance of coverage was assigned to the defendant. As to the events which transpired after reaching this point, the testimony is sharply contested.
The plaintiffs claim that on August 20, 1952 the “New York Automobile Assigned Risk Plan ’ ’ typed and mailed a letter addressed to ‘ ‘ Mr. J. C. Berenz, Auto. Dept. Atlantic Mutual *302 Ins. Co., 59 Wall St., New York, N. Y.”, and that the letter carried the information that it was in reference to “William L, Kaczmarek, Schintns Rd., E. Eden, N. Y.” The letter was received in evidence as Exhibit B-18. The letter reveals the information that “ the producer of record ” was “ Leonard P. Gernold, 401 Genesee Bldg., Buffalo, N. Y.”, and carries notations indicating that copies thereof were sent to the applicant and the producer. It also informed the addressee that “ in accordance with the rules of the New York Automobile Assigned Risk Plan”, the assignment of the applicant’s risk was made to the defendant insurance company. It also informed the addressee that section 14 of the plan “ allows your company two working days” in which to “issue a policy or binder”, which “policy or binder [is] to become effective 12:01 a.m. on the day following the second working day following the effective date of the filing. ’ ’
The plaintiffs claim that the testimony supports their contention that under the rules and regulations of the plan, the defendant should have issued a policy or binder effective as of 12:01 a.m., August 23, 1952.
The defendant claims that it did not receive the letter until Friday, August 22 and that August 23 and 24 (Saturday and Sunday) not being working days (which plaintiffs concede), the effective date of the policy or binder was as it was designated by it, to wit: 12:01 a.m., August 26, 1952.
The claim of the defendant is that even if the letter was mailed on August 20,1952, it was not received until Friday, August 22, 1952, and thus, under the rules of the assigned risk plan, August 22 (Friday) constituted the first “working day” and Monday, August 25, the second ‘ ‘ working day ’ ’ made the effective date of any policy or binder 12:01 a.m., August 26, 1952.
After all the testimony relative to the methods of procedure practiced in the assigned risk plan office and in the office of the defendant insurance company was presented concerning the various phases of the issues created by the testimony, the attorneys for the respective parties and the court conferred as to the wording or formulation of specific questions of fact to be submitted to the jury for its consideration and advice. As a result of such conference, the following were adopted and submitted in writing to the jury, viz:
1. On what date do you find that Ex. B-18 was typed?
2. On what date do you find Ex. B-18 was delivered to the United States Post Office for transmission to the addressee?
3. On what date do you find that Ex. B-18 was delivered to defendant’s P. O. Box 6?
*303 4. On what date do you find that Ex. B-18 was received in defendant’s office?
The jurors were given copies of the questions and had them in their possession during the charge of the court.
FIRST INQUIRY
To the question numbered 1, the jury answered August 20, 1952.
I adopt the answer as my own. I find and decide that the evidence in respect to the typing, dating and mailing the letter, Ex. B-18, is clear, convincing and credible. It supports the claims of the plaintiffs on the issue.
SECOND INQUIRY
To the question numbered 2, the jury answered August 20, 1952.
I adopt the answer as my own. I find and decide that the testimony relative to the procedure followed and practiced in the office of the assigned risk plan relative to the mailing of letters is clear, convincing and credible. It supports the claims of the plaintiffs on the issue.
THIRD INQUIRY
To the question numbered 3, the jury answered August 21, 1952.
I adopt the answer (Thursday, Aug. 21, 1952) as my own. I find and decide that the testimony relative to the issue is clear, convincing and credible. It amply supports the contentions of the plaintiffs. It should be borne in mind that the defendant instituted or created a departure from the routine procedure relative to the delivery of its mail when it instructed the United States Post Office authorities to deliver its mail to P. 0. Box No. 6. The routine method and the method otherwise employed was described by the witnesses.
When the routine procedure is followed, the law is well settled that upon proof of the mailing of a letter in the same city as the addressee, the court may take judicial notice that it would be delivered in the usual course of the mails on the following day (News Syndicate Co. v. Gatti Paper Stock Corp., 256 N. Y. 211, 214, citing Morel v. Stearns, 37 Misc. 486). In the News Syndicate case, the court writes at page 214 of its opinion as follows: ‘1 The offices of both the plaintiff and the defendant were in the city of New York. The fact that letters mailed in the city are received at the place of business of the party to whom mailed the next day after mailing is a matter of common knowledge and the court could take judicial notice of the fact *304 that a letter mailed by the plaintiff to the defendant would be delivered in the usual course of the mails on the following day, in the event that it was not a Sunday or holiday, and if a Sunday or holiday on the next succeeding business day.”
In the opinion which the Court of Appeals approved and cited (supra), the Appellate Term of the Supreme Court writes, in part, as follows: ‘ ‘ The court will take judicial notice of the fact that a letter, mailed in the city of New York at six fifty p.m. on May twenty-ninth, would be delivered in the usual course of the mails on the morning of May thirtieth ” (p. 488).
In the instant case the defendant utilized the services of private trucking firms to call for its mail at the post office and to transport it to the office of the company. I find and decide that the delivery of the mail was complete when it was delivered to the post-office box. If the court were to hold that delivery of the notice of assignment had to await the fulfillment of the trucker’s contract obligation to the addressee, the delivery could be subject to many delays for which the applicant for coverage should not be made to suffer.
FOURTH INQUIRY
To question numbered 4, the jury answered August 22, 1952.
I adopt the answer as my own. I find and decide that the .testimony supporting the answer is clear, convincing and credible.
The physical or actual receipt of the letter in the mail room of the office of the defendant, does not, under the circumstances, however, determine the effective date of the delivery of the letter.
The jury found and I adopt its finding as my own that the letter was actually delivered to the defendant’s designated place for the delivery of its mail, viz., P. 0. Box No. 6. The prior instructions issued by the defendant prevented its being delivered to the mail room, in the office of the defendant. Thus, the instructions of the defendant, according to the testimony, mandated a delivery at the defendant’s post-office box.
The rules and regulations governing the conduct of the assigned risk business under section 63 of the Insurance Law were promulgated by the companies. Under those circumstances, the law is clear that if any doubt arises as to the meaning of the provisions of the rules, such doubt should be resolved against the party drafting the rule.
There is no doubt that the operation of the assigned risk plan provided for the mailing of the notice and further that the *305 assignee had two working days only in which to issue a policy or binder to become effective 12:01 a.m. on the day following the second working day. There is no provision which provides that a notice of assignment of a risk must be received in the mail room or office of the addressee before a delivery thereof is effected. In this case, I find and decide that the letter was delivered in accordance with the prior instructions issued by the defendant to the U. S. Post Office Department and that the date of such delivery to the post-office box was Thursday, August 21, 1952.
Under the plan, the defendant had two working days, to wit: Thursday, August 21, and Friday, August 22, to issue a policy or binder effective 12:01 a.m., Saturday, August 23, 1952. It did not do so. The failure to do so resulted from a mistake of law rather than one of fact and does not defeat the plaintiffs’ right to a reformation (Civ. Prac. Act, § 112-f).
In view of all the foregoing, I find and decide that the plaintiffs have proved their causes of action by clear, convincing and credible evidence and that they are entitled to have the effective date of the policy or binder issued to William L. Kaezmarek, the motorist, changed to 12:01 a.m., August 23, 1952. I also find and decide from the facts established by clear, convincing and credible evidence, that the motorist William L. Kaezmarek instituted and conducted bankruptcy proceedings in which he listed the judgments secured against him by the Beemans in this action and has been duly discharged therefrom; that Kaezmarek had informed the defendant insurance company of the commencement of the Beeman lawsuits and had given the defendant an opportunity to appear for him and defend the suits; that the defendant company failed and refused to do so; that the lawsuits resulted in judgments in favor of the Beemans, of which notices and copies thereof were given to the defendant; that all of the preliminary procedures required to be carried out by the plaintiffs herein had been performed by them or in their behalf before these actions were instituted against the defendant; that no part of either of the judgments has been paid and that the plaintiffs are entitled to judgments against the defendant (a) for the correction or reformation of the effective date of the policy or binder issued to William L. Kaezmarek, from 12:01 a.m., August 26 (Monday), 1952 to 12:01 a.m., August 23 (Saturday), 1952, and (b) for judgments for money damages against the defendant in accordance with the terms and provisions of the policy or binder, corrected as follows:

*306
Clista G. Beeman Estate

Limit of bodily injury liability.................... $10,000.00
(Policy conditions paragraph 3)
Supplementary payments under paragraph II (c) of insuring agreements:
Interest on full amount of judgment of $21,260.50 from September 4,1957 (date of judgment) to July
19,1961 — three years ten and one-half months.... 4,945.04
Costs awarded by judgment...................... 51.00
Total to Clista C. Beeman Estate to July 19,1961.... $14,996.04

Henry J. Beeman Estate

Limit of liability for bodily injury (amount of judgment) ........................................ $6,660.04
Interest on judgment from September 4, 1957 (date of judgment) to July 19,1961 — three years ten and
one-half months............................... 1,548.45
Costs awarded by judgment...................... 51.00
Total award to Henry J. Beeman Estate to July 19,
1961 ......................................... $8,259.49
In addition, plaintiffs are entitled to costs and disbursements.