GLICKSTEIN, Judge.
Appellants, Raidle-Cook Insurance, Inc. (Raidle-Cook), Milt Craven (Craven), and Employers Reinsurance Corporation (Employers), were defendants in an action for negligence and breach of contract relative to the obtaining of a workmen’s compensation insurance policy. They take this appeal pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv) from an order granting, inter alia, the motion of the plaintiff-appellee, Palm Beach Sanitation, Inc. (Palm Beach), for summary judgment as to those defendants.[1] We reverse.
At the outset we note none of the parties to this appeal argued that there were unresolved questions of fact.
In early March of 1978, Palm Beach asked Craven, one of Raidle-Cook’s agents, to obtain for it a workmen’s compensation policy. Because the policy in effect would have lapsed at 12:01 a. m., March 27, 1978, Palm Beach wanted the new policy to be effective from then on. Although Craven attempted to get several policies in the “voluntary” market, he was unable to do so because of Palm Beach’s high risk experience. Around 1:30 p. m. on March 23rd, after the last attempt proved unsuccessful, Craven mailed Palm Beach’s application with a $66,455 check to the Florida Compensation Rating Bureau in Jacksonville.[2] The Bureau designated Lumbermen’s Mutual Casualty Company (Lumbermen’s) as the insurer to be bound.
This action arose because the Bureau bound Lumbermen’s as of 12:01 a. m. on March 28, 1978, leaving a gap of one day, March 27th, in Palm Beach’s coverage; the same day a Palm Beach employee was seriously injured on the job. Because Palm Beach was uninsured that day, it was required to pay from its own funds substantial benefits to the injured employee pursuant to an order of the Judge of Industrial Claims.
Palm Beach sued Raidle-Cook, Craven, and Employers (Raidle-Cook’s errors and omissions carrier) for negligence and breach of contract, seeking indemnification for the payments it had made to its employee. Palm Beach joined Lumbermen’s as a defendant in order to obtain a declaration that coverage began 12:01 a. m., March 27, 1978, or a reformation of the contract making March 27th the date on which coverage began. Subsequently, the trial court awarded summary judgment to Palm Beach against the defendants-appellants. Implicitly it concluded Lumbermen’s was not bound until 12:01 a. m., March 28, 1978.
Appellants claim Lumbermen’s was bound at 12:01 a. m., March 27,1978, and no gap existed in Palm Beach’s coverage. Accordingly, appellants argue Palm Beach did not have a cause of action against them. We agree.
The National Council on Compensation Insurance wrote and submitted the rules for binding carriers under the Assigned Risk Plan for Florida to the Florida Insurance Commissioner for consideration and approval. In March of 1978, the last sentence of Rule 2(b) of the foregoing plan provided: “Coverage will be bound at 12:01 A.M. on the first day following receipt of the deposit premium and the completed application by the Administrative Office, or expiration of existing coverage, whichever is later.” In this case the governing administrative office was the Bureau.
*615 The issue here is reduced to the following question: when did the Bureau receive the application and the premium check? Craven mailed the application with the premium check about 1:30 p. m., March 23, 1978. They arrived in Jacksonville the following morning and were available to be picked up at the Bureau’s Arlington Station Post Office Box between 8:30 a. m. and 12:30 p. m., Saturday, March 25,1978. Because the Bureau did not pick up mail on Saturdays, it did not pick up the application and the premium check until Monday. Thus, the Bureau stamped March 27th as the receipt date for the application, changed the desired effective date, and bound coverage as of 12:01 a. m., March 28th.
Appellants posit that receipt occurred the morning of March 25,1978, when the application and the premium check were placed in the Bureau’s post office box or mail sack. Appellees contend the Bureau did not receive the application and the premium check until they reached the Bureau’s office March 27th. Appellants’ position is supported by 31A C.J.S. Evidence § 136, at 298 (1964) citing Cary v. Atlantic Mutual Insurance Co., 30 Misc.2d 299, 218 N.Y.S.2d 3 (Sup.Ct.1961), rev’d on other grounds, 16 A.D.2d 867, 228 N.Y.S.2d 345 (1962): “Where the addressee receives his mail in a post office box, delivery is deemed complete when the mail is delivered to the box regardless of when it is actually picked up by the addressee or his employees.”
The plaintiffs in Cary sought reformation of an automobile liability insurance policy underwritten by Atlantic Mutual. The plaintiffs’ decedents had been involved in an automobile accident and brought suit against a Mr. Kaczmarek, Atlantic Mutual’s alleged insured. Notice and an opportunity to defend were given to Atlantic Mutual. It, however, refused to defend and judgments were awarded to plaintiffs’ decedents which neither Atlantic Mutual nor Kaczmarek satisfied. Consequently, plaintiffs sued Atlantic Mutual. They contended .the court should judicially change the effective date of the insurance policy to 12:01 a. m., August 23, 1952, to furnish coverage for the plaintiffs’ decedents’ August 24th accident. Atlantic Mutual argued 12:01 a. m., August 26, 1952, was the effective date of the policy and should not be changed. The determinative question was: when precisely had Atlantic Mutual gone on the risk?
Because the court found “there were sharp issues of fact” on that question, it impaneled a jury to answer written interrogatories submitted to it after the parties presented evidence to support their conflicting positions. Id. at 301, 218 N.Y.S.2d at 6. According to the court, the evidence showed Kaczmarek was unable to obtain liability coverage through regular channels. Through a broker, he applied for coverage to the Automobile Assigned Risk Plan. Apparently the Risk Plan was similar in function to the Bureau in the present case.
The Risk Plan received the application and a cover letter August 15, 1952. Thereafter, Risk Plan typed and mailed a letter August 20th informing Atlantic Mutual, a member of the plan, it had two working days under the plan to issue a “ ‘policy or binder ... to become effective 12:01 A.M. on the day following the second working day following the effective date of the filing.’ ” Id. at 302, 218 N.Y.S.2d at 7. Atlantic Mutual argued that, regardless of the mailing date, it had not received the letter until Friday, August 22nd, thus giving it until Monday, August 25th, before it was required to issue the policy to Kaczmarek. This would have made 12:01 a. m., August 26th, the effective date of the policy or binder. That the letter from the Risk Plan was mailed to a street address, but the post office delivered it to Atlantic Mutual’s post office box according to its instructions, was undisputed.
The disputed facts were covered by the special interrogatories submitted to the jury. It answered them in the following manner: when had the Risk Plan letter 1) been typed? August 20th; 2) delivered to the post office? August 20th; 3) delivered to Atlantic Mutual’s post office box? August 21st; and 4) delivered to Atlantic Mutual’s office? August 22nd. The trial *616 judge found sufficient evidence supported each of the jury’s answers and adopted them as his own. He also made the following findings crucial to Cary's resolution and directly relevant to the present case:
I find and decide that the delivery of the mail was complete when it was delivered to the post office box. If the court were to hold that delivery of the notice of assignment had to await the fulfilment of the trucker’s contract obligation [Atlantic Mutual used an independent contractor rather than one of its employees to pick up its mail from the post office box] to the addressee, the delivery could be subject to many delays for which the applicant for coverage should not be made to suffer.

... There is no provision [in the Assigned Risk Plan] which provides that a notice of assignment of a risk must be received in the mail room or office of the addressee before a delivery thereof is effected. In this case, I find and decide that the letter ... was delivered in accordance with the prior instructions issued by the defendant to the U. S. Post Office Department and that the date of such delivery to the P. 0. Box was Thursday, August 21, 1952.
Id. at 304, 218 N.Y.S.2d at 9. The court then concluded Atlantic Mutual had had two working days — August 21st and 22nd— to issue a policy or binder effective 12:01 a. m., Saturday, August 23, 1952. Its failure to do so required reformation of the policy and payment to the plaintiffs of the judgments against Kaczmarek up to the limits of his policy.
The appellate division reversed and ordered a new trial because the plaintiffs had failed to offer competent proof that the Risk Plan had mailed the notice of designation to Atlantic Mutual, making receipt on August 21st speculation. Cary v. Atlantic Mutual Insurance Co., 16 A.D.2d 867, 228 N.Y.S.2d 345 (1962). The new trial resulted in another judgment in favor of the plaintiffs. Thereafter, the appellate division summarily affirmed the judgment when Atlantic Mutual appealed. Cary v. Atlantic Mutual Insurance Co., 20 A.D.2d 758, 247 N.Y.S.2d 993, motion for leave to appeal denied, 14 N.Y.2d 485, 251 N.Y.S.2d 1025, 200 N.E.2d 219 (1964). This affirmance indicates the appellate division found no error in the original judgment granting reformation, money damages, and finding that delivery to the post office box began the two-working-day limit for issuance of the policy. See also Levy v. Massachusetts Accident Co., 124 N.J.Eq. 420, 2 A.2d 341 (1938), aff’d, 127 N.J.Eq. 49, 11 A.2d 79 (1940).[3]
We are of the opinion that workmen’s compensation insurance coverage should not depend upon the contingencies that might occur after a binding agent is in possession and control of the application and the premium. We share the same concern expressed by the New York Court in Cary that the insured should not be penalized for delays that possibly could occur after the postal employees, pursuant to the Bureau’s instructions, deposited the application and the premium check in its Arlington Station Post Office box or sack. When Craven mailed the application and premium check to the Bureau, the binding agent, he was complying with directions it had provided on the application. Therefore, the insured should not have been denied coverage simply because the Bureau chose, for whatever reason, not to pick up its mail at the post office.
*617 Accordingly, we reverse and remand with directions to enter judgment for appellants against Palm Beach Sanitation.[4]
REVERSED and REMANDED.
BERANEK and HURLEY, JJ., concur.

. The order also granted summary judgment to defendant Lumbermen’s Mutual Casualty Company (Lumbermen’s) against Palm Beach and the remaining defendants. As Lumbermen’s points out, although only it filed an appellee brief (Palm Beach merely joined in that brief), this court cannot review the portion of the order granting Lumbermen’s motion for summary judgment because that portion of the order did not determine the issue of liability in favor of a party seeking affirmative relief as Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv) requires.

. The Bureau is an unincorporated association of insurance companies that designates insurers to accept workmen’s compensation policy applications on a rotating involuntary assigned risk basis.

. Regarding the payment of a premium, the trial court in Levy said:
The delivery to, and receipt by, the company, at its home office, would be made when the postal officials delivered it into the place which had been designated by the company for such delivery and receipt of mail addressed to its home office. In the instant case, defendant rented and maintained a private box at the Boston post office, into which, by its direction, the postal officials placed all incoming mail of the company addressed to it at its home office. Clearly delivery to the company would be valid and complete, by the placing of a letter so addressed, into that box, by the postal officials, just as much as if it had been delivered by a government letter carrier into the separate room in its office building... . 124 N.J.Eq. at 425, 2 A.2d at 345.

. The anomalous position in which Palm Beach Sanitation is placed by this decision in light of the summary judgment in favor of Lumbermen’s is curable but not by this court in this proceeding because of Florida Rule of Appellate Procedure 9.130.